Pratt, J.
The surrogate became county judge in January, 1876, under his election ; he had been serving as an appointee for some weeks previous.
It is beyond dispute that he had been advising the executor and trustee for some time before he became judge, so that the bills for his services formed a part of the executor’s accounts. It is equally clear that he *272 acted as attorney and counsel in several foreclosure proceedings after he became county judge, and that the vouchers for his services subsequently came before him on the accounting. I do not think this is permitted under a fair interpretation of the statutes. “Ho surrogate shall be counsel, &c., for or against any executor . . . over whom or whose accounts he could have, any jurisdiction by law” (R. S. tit. 1, pt. III. c. 11). “Ho judge of any court shall have a voice in the decision of any cause in which he has been counsel, attorney, &c., in the subject-matter of which he is interested” {L. 1871, c. 859).
Was the judge interested within the meaning of the statute ?
Take, for example, the case of an attorney who had acted for an executor, and charged, and received, grossly exorbitant fees for his services, and having been elected judge should attempt to pass the accounts. As between the judge and the executor, the payment having been voluntary, no question could be raised; but suppose the beneficiaries of the trust object. ■ Would he not be compelled to pass judicially upon the reasonableness of his own charges ?
But it is claimed that such a question did not arise ; the moment the account was presented the objection was manifest.
Having issued a citation, the next step was to appoint a special guardian for the infants, who would or might be interested in objecting to the items before referred to. Whether the guardian objected or not,, the act of 'passing the accounts was judicial. It was the exercise of that power over trusts formerly exercised by the old court of chancery, and the court was bound to investigate and take charge of the infants’ interest as their ultimate guardian.
The next question is whether the surrogate had been *273 engaged in any cause, &c., within the meaning of the statute. Manifestly he had.
The cause .which comes before the surrogate on the accounting is the propriety or impropriety of each and every act of the trustee.
The trustee attempts to render an account of his acts, the purpose of which is to bind the estate by the record to be made.
To say that he may select from the account certain items and limit the surrogate’s disqualification to such items as he has advised upon, would defeat the object of the statute when applied to surrogates’ courts.
The ground of failure of justice cannot be successfully argued to sustain the surrogate’s decrees. He was not the only officer before whom this accounting might have been had. Where the surrogate and county judge are disqualified the district attorney may act, or the plenary jurisdiction of the supreme court over such trusts as existed in this matter can be invoked to give the necessary relief.
Upon the case as it now stands, I am constrained to hold that the surrogate was interested in the matter upon which his decrees were passed, and that he had acted as counsel in the same matter within the meaning of the statute.
If these views are correct it follows,- that the decrees were void.
Judgment accordingly.*

 An interlocutory judgment was thereupon entered, setting aside and declaring void all the before-mentioned proceedings before Mr. Westervelt as surrogate, and ordering a reference to take an account of all proceedings of the executors from the beginning of their trust, and also to take testimony in regard to all the issues raised by the pleadings and not yet disposed of. •