In the Matter of the Rehabilitation of BOND AND MORTGAGE GUARANTEE COMPANY. (No. 1.) In the Matter of the Application of CITY BANK FARMERS TRUST COMPANY Respecting Bond and Mortgage of NEW YORK POLYCLINIC MEDICAL SCHOOL AND HOSPITAL. CITY BANK FARMERS TRUST COMPANY, Petitioner, Appellant; GEORGE S. VAN SCHAICK, Superintendent of Insurance of the State of New York, as Rehabilitator of Bond and Mortgage Guarantee Company, and BOND AND MORTGAGE GUARANTEE COMPANY in Rehabilitation, Respondents. (No. 2.) In the Matter of the Application of CITY BANK FARMERS TRUST COMPANY Respecting Bond and Mortgage of NEW YORK POLYCLINIC MEDICAL SCHOOL AND HOSPITAL. CITY BANK FARMERS TRUST COMPANY, Petitioner, Respondent; GEORGE S. VAN SCHAICK, Superintendent of Insurance of the State of New York, as Rehabilitator of Bond and Mortgage Guarantee Company, and BOND AND MORTGAGE GUARANTEE COMPANY in Rehabilitation, Appellants. (Consolidated Appeals.) — On appeal by City Bank Farmers Trust Company from the order dated June 7, 1934, determining the respective rights of the parties with respect to a mortgage upon the premises owned by the New York Polyclinic Medical School and Hospital, held by City Bank Farmers Trust Company and guaranteed by the Bond and Mortgage Guarantee Company, the order is affirmed, with ten dollars costs and disbursements. With respect to the payments toward arrears of interest, the mortgage company is entitled to reimburse itself for interest payments advanced. (*Matter of People* [*Bond & Mortgage Guarantee Co.*], 245 App. Div. 744; affd., 270 N. Y. 527; *Matter of People* [*Lawyers Title & Guar. Co.*], 265 id. 20, 26.) And this is so when the company is operated by the Superintendent of Insurance, as rehabilitator. Within the contemplation of the parties, part of the consideration for the making of the guaranty was the control of the mortgage. Upon the withdrawal of control from the mortgage company, resort to the real estate is forever lost to the company, but equity dictates that an offset on its liability be allowed to the extent of the value of the security thus withdrawn, such value to be fixed by the value of the real property covered by the mortgage. Any other course would interfere with the efforts of the rehabilitator to the prejudice of all the creditors of the mortgage company. The fairness of the principle thus invoked is well recognized in bankruptcy, liquidation and in the method of arriving at the amount of a deficiency judgment. (Glenn Liquidation, §§ 528, 530; *Armory v. Francis*, 16 Mass. 308; Ins. Law, § 425; Civ. Prac. Act, §§ 1083-a, 1083-b.) If the company were in liquidation, under section 425 of the Insurance Law, it would either retain

the security and be liable to the extent of the whole guaranty, or release the security and remain responsible only to the extent of the liability, if any, that survived. Equity requires the adoption of the principle as a matter of fairness in rehabilitation. Lazansky, P. J., Davis, Johnston and Adel, JJ., concur; Young, J., concurs for affirmance as to that part of the order which disposes of the payments toward arrears of interest; but dissents as to that part of the order which authorizes an offset on the guaranty on the ground that the Bond and Mortgage Guarantee Company has no interest in the bond and mortgage which authorizes a fixation of the value of the real estate at this time and before the guarantor has asserted any rights under its guaranty, and votes to grant the relief prayed for in so far as it may be consistent with this memorandum. On appeal by the rehabilitator of the Bond and Mortgage Guarantee Company and the Bond and Mortgage Guarantee Company from the order dated May 20, 1935, which fixes the value of the premises at $525,000, the order is affirmed, with ten dollars costs and disbursements. We have examined the reports of the various appraisers and the proceedings before the referee with respect to the determination of value. The appraisers are very nearly in agreement as to the value of the land. We are of the opinion that the value of the whole fixed by the court is the fair and reasonable value as of the date when possession of the security was taken by the bank. Lazansky, P. J., Davis and Adel, JJ., concur; Young, J., dissents in conformity with the views expressed in his memorandum in connection with the decision of the appeal from the order dated June 7, 1934, decided herewith. Johnston, J. I dissent and vote to reverse. I believe the value of the land and improvements is in excess of $525,000, fixed by the referee and the Special Term. This amount was arrived at because it appeared there were five vacant hospitals in Manhattan for which there were no present buyers; that " there was no market for the Polyclinic Hospital property for use as a hospital " and " the premises had no market value except for conversion to other uses." Assuming, as the court at Special Term did, that the value of the land is $325,000, the difference is not the fair and reasonable value of the improvements but represents merely what the referee found, to wit, " the amount of salvage to be derived from the existing buildings when converted to other uses." It is conceded the buildings constitute a complete and modern hospital and medical school unit. It is not disputed that the value of the property as such is upwards of $1,000,000. In my opinion, $525,000 is not the fair and reasonable value of the premises but represents only what would be realized on a forced sale. What a willing buyer may be ready to pay for property and a willing seller ready to take for it may be accepted as the fair market value in normal times, but during these times of economic depression courts must adopt new standards. (*President & Directors of Manhattan Company* v. *Premier Building Corp., ante,* p. 297.)